Irving STOLBERG

v.

J. Edward CALDWELL, Individually and as Comptroller of the State of Connecticut, et al.

Civ. No. H–75–238.

United States District Court, D. Connecticut.

Dec. 10, 1976.

---

Louis M. Winer, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for plaintiff.

Carl R. Ajello, Atty. Gen., Bernard F. McGovern, Jr., Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR FOR A PRELIMINARY INJUNCTION

BLUMENFELD, District Judge.

In this action, the plaintiff, Irving Stolberg, raises several constitutional challenges to the suspension of his salary payments for services rendered as a professor at Southern Connecticut State College ("SCSC"). The basis for this suspension of salary payments is that Stolberg has allegedly violated Connecticut's "dual-job" ban, Art. III, § 11, Conn.Const. and § 2–5 Conn.Gen.Stat., by serving as a faculty member at a state college while also serving as a member of the state legislature. The defendants are present and former fiscal and legal officials of the State of Connecticut, including the state Comptroller, Attorney General and Auditors of Public Accounts. The members of the board of trustees of SCSC have also been named as defendants.

The present ruling deals solely with plaintiff's claim that the withholding of his salary without a prior hearing violates the due process clause of the fourteenth amendment. He has moved for partial summary judgment on this claim and, alternatively, for a preliminary injunction to enjoin interference with his salary payments prior to a hearing. Jurisdiction is conferred on this court by 28 U.S.C. § 1343 and 28 U.S.C. § 1331.[1]

### I.  Factual Background

The record reveals that there is no dispute as to the following facts. In 1966, the plaintiff, Irving Stolberg, was appointed to the SCSC faculty as an assistant professor to teach in the geography department. However, his services were terminated by the president of SCSC and its board of trustees in 1969. In February 1972, this court found that the dismissal was an impermissible retaliation against Stolberg for exercising his first amendment rights. The board of trustees was ordered to "promptly offer to reinstate the plaintiff as a faculty member with tenure." *Stolberg v. Members of the Board of Trustees*, Civil No. 13,591 (Feb. 29, 1972).[2]

On August 28, 1974, Stolberg returned to his faculty position at SCSC with tenure. At that time, plaintiff was, as he had been since 1970 and as he continues to be, a member of the Connecticut General Assembly. In early October 1974, Stolberg learned that the state Auditors of Public Accounts were questioning whether he was in violation of the dual-job ban,[3] which prohibits a member of the General Assembly from holding a position in the executive or judicial branch of the state government. On October 8, 1974, plaintiff wrote to then-Governor Meskill requesting an opportunity to present arguments that the dual-job ban was inapplicable. This request was denied. On October 15, 1974, the state's Comptroller sought an opinion from the Attorney General as to whether the dual-job ban was being violated. The Attorney General, by formal letter of advice dated October 28, 1974, concluded that the ban applied to Stolberg.[4] The Comptroller, on the basis of this opinion, commenced to withhold Stolberg's paycheck as a faculty member at SCSC on November 22, 1974. Stolberg was

---

1. In a Ruling on a Motion to Stay, I stated that "it may be that this is merely a breach of contract by a state agency and does not rise to the level of a federal due process claim." The parties have briefed this point and I now find that plaintiff has alleged a substantial federal claim which gives this court jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

2. Other relief was also given, but is not relevant here. The Second Circuit affirmed in part and reversed a portion not here material. *Stolberg v. Members of Board of Trustees*, 474 F.2d 485 (2d Cir. 1973).

3. Affidavit of Irving Stolberg, Aug. 12, 1975 ¶ 4.

4. Defendants' Exhibit 2.

informed of this action by letter dated November 21, 1974.[5] Since that time, plaintiff has continued to perform his duties as a faculty member of SCSC, and the board of trustees has continued to submit his name on the payroll for each pay period. However, the Comptroller is still withholding these salary payments.

On July 22, 1975,[6] Stolberg commenced an action in state court seeking a declaratory judgment that the dual-job ban was being improperly applied to him and that if it was being properly applied it was overbroad and vague in violation of the federal constitution. That case is still pending, *Stolberg v. Niejalik,* No. 144619 (Superior Court, New Haven County). At the same time, plaintiff brought the present action in this court. By amended complaint on March 2, 1976, plaintiff asserts that the failure to provide a hearing prior to the application of the dual-job ban violates the due process clause of the fourteenth amendment. He also claims that the dual-job ban has been applied in bad faith and in retaliation for the exercise of his first amendment rights. Only the due process claim is before the court on the present motion.

## II. *Abstention*

On January 7, 1976, I denied defendants' motion to stay this action pending a decision in plaintiff's suit in state court. While recognizing that a stay was not necessary, I suggested at that time that abstention might be appropriate. I invited the parties to brief that question, and they have done so. The relationship between the federal claims presented to this court and the federal and state claims raised in state court has now been clarified. Accordingly, I am now able to assess the propriety of abstaining in this case.

There is a narrow set of circumstances in which a federal district court should abstain and defer to the state courts. This doctrine evolves from *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention gives the federal court discretion to abstain when certain essential conditions are met.

"In general, the three essential conditions for invocation of the doctrine of abstention are that the state statute be unclear or the issue of state law be uncertain . . . that resolution of the federal issue depend upon the interpretation to be given to the state law . . . and that the state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue."

*McRedmond v. Wilson,* 533 F.2d 757, 761 (2d Cir. 1976). These three conditions are not met in the present case and, therefore, I will not abstain.

As noted earlier, the only question presently before this court is whether due process requires a hearing before the plaintiff's salary can be withheld for violation of the dual-job ban. Thus, the only basis for *Pullman* abstention would be if Connecticut law could be construed to require a hearing before invocation of the dual-job ban.[7]

The dual-job ban is imposed by article 3, § 11 of the Connecticut constitution[8] and

5. Affidavit of Irving Stolberg, Aug. 12, 1975 ¶ 5.

6. In December 1974, Stolberg sought a contempt judgment, arguing that the application of the dual-job ban was in contempt of my decision in 1972 that he be returned to the SCSC faculty. In June 1975, I denied that request. This decision has been affirmed by the Second Circuit, *Stolberg v. Members of Board of Trustees,* 541 F.2d 890 (2d Cir. 1976) and the Supreme Court has denied cert., ─── U.S. ───, 97 S.Ct. 260, 50 L.Ed.2d 181 (1976).

7. There is an unsettled question of state law as to whether a violation of the dual-job ban results in a presumption that the earlier held state job is voluntarily relinquished. However,

this question is not relevant to the present motion and, therefore, does not justify abstention. Part III A. *infra.*

8. Article 3, § 11 provides:

"No member of the general assembly shall, during the term for which he is elected, hold or accept any appointive position or office in the judicial or executive department of the state government, or in the courts of the political subdivisions of the state, or in the government of any county. No member of congress, no person holding any office under the authority of the United States and no person holding any office in the judicial or executive department of the state govern-

§ 2–5 of the Connecticut general statutes.[9] Neither of these provisions is susceptible to the construction that a hearing is required before the ban can be applied. Indeed, the defendants do not even suggest such an interpretation. For this reason, this case is different than *Boehning v. Indiana State Employees Ass'n, Inc.,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975) (per curiam), in which the Supreme Court held that abstention was proper where controlling state law might require the hearing demanded by the plaintiff.

It is true that the decision in the pending state case might render Stolberg's claim moot in this court. However, the precise due process issue presented here is not being litigated in the state court. That court is concerned only with whether the dual-job ban is being properly applied and with whether it is constitutional as so applied. As the Second Circuit has recently stated:

> "It is a pillar of federal jurisdiction that one having a bona fide claim is normally entitled as a matter of right to have the claim adjudicated by a federal tribunal and that this right may not be defeated by relegating the matter to the state court . . . ."

*McRedmond v. Wilson, supra* at 760. With this principle in mind, I find that *Pullman* abstention is inappropriate in the present circumstances.

### III. *Due Process Claim*

■ The Supreme Court has established the framework for analyzing a due process claim such as that presented here. The initial determination is whether the plaintiff has been deprived of "interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If such a deprivation has occurred, the remaining question is "the nature of the process that is due." *Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972). I now apply this two-step analysis.

### A. *Property Interest*

■ Plaintiff claims that the withholding of his salary payments deprives him of a property interest. Defendants counter that under state law when an official holds two jobs which would result in a violation of the dual-job ban he is presumed to have voluntarily relinquished his first job. *See State ex rel. Butera v. Lombardi,* 146 Conn. 299, 303, 150 A.2d 309 (1959). Because Stolberg was re-elected to the state legislature after being returned to the SCSC faculty, the defendants argue that he is presumed to have voluntarily relinquished his teaching job. They contend further that this voluntary relinquishment of his teaching job precludes Stolberg from having a property interest in the salary payments which are being withheld. It is true that Stolberg's property interests turn on state law. *Board of Regents v. Roth, supra* 408 U.S. at 577, 92 S.Ct. 2701. However, I disagree with defendants' arguments and conclude that plaintiff has been deprived of a property interest.

Defendants' voluntary relinquishment argument is unpersuasive. They are withholding plaintiff's salary payments on the basis of the dual-job ban. If the dual-job ban is being properly applied, it may be that plaintiff will be deemed as a matter of state law to have voluntarily relinquished his teaching position. However, it begs the question to claim on that basis that the initial withholding of salary payments does

---

ment or in the government of any county shall be a member of the general assembly during his continuance in such office."

**9.** Section 2–5 provides:

"No member of the general assembly shall, during the term for which he is elected, be nominated, appointed or elected by the governor, the general assembly or any other appointing authority of this state to any posi-

tion in the judicial, legislative or executive department of the state government, except as provided in this section. The provisions of this section shall not apply where it is expressly provided by law that a member of the general assembly as such shall be nominated or appointed to any board, commission, council or other agency in the legislative department."

not deprive him of a property interest. The present question is not whether the ban is being properly applied, but rather whether Stolberg has a property interest which is being deprived.

Defendants concede that plaintiff has not been removed or dismissed from his teaching position.[10] He remains a tenured member of the SCSC faculty and continues to perform the duties of such a faculty member. As such, he enjoys the protections accorded to a tenured faculty member under Connecticut law. P.A. 75–529, Conn. Gen.Stat.Ann. (1976 Appendix) at 136. *Cf. Perry v. Sindermann,* 408 U.S. 593, 599–600, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971). Furthermore, the suspension of Stolberg's salary payments deprives him of wages for services performed, and wages have been described as a "specialized type of property." *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 340, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Therefore, I must find that plaintiff has been deprived of a property interest.

### B. *The Process Due*

■ While deprivation of a property interest triggers the protection of the fourteenth amendment, the determination of what process is due still remains. The essence of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The Supreme Court has recognized, however, that an opportunity to be heard *after* the challenged governmental action is often constitutionally adequate. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The plaintiff is presently contesting the application of the dual-job ban in state court. Therefore, the question is whether the opportunity to be heard in that judicial forum is sufficient for purposes of the due process clause.

■ In *Mathews v. Eldridge, supra,* the Supreme Court articulated three factors for identifying the specific dictates of due process:

> "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* 424 U.S. at 335, 96 S.Ct. at 903. An assessment of these three factors in the present context leads to the conclusion that plaintiff's due process claim is without merit.

■ The first factor to be considered is the private interest that will be affected. Plaintiff's interest is the uninterrupted receipt of his salary payments. Of course, this interest is substantial and must be accorded great weight. However, it is not in itself dispositive and may be outweighed by other factors. *Mathews v. Eldridge, supra* at 340–41, 96 S.Ct. 893. The third *Eldridge* factor looks to the burden of additional procedures. The infrequency with which the dual-job ban is invoked suggests that any additional procedural requirements would not involve substantial fiscal and administrative burdens for the state. Therefore, the first and third factors outlined in *Mathews v. Eldridge* do point in plaintiff's favor. However, consideration of the remaining factor is determinative of Stolberg's claim.

As I have noted elsewhere:

> "[t]he due process clause does not require procedural safeguards as an end in themselves; there must be a demonstration that the safeguard in question will measurably increase the protection afforded the right at issue."

*Cofone v. Manson,* 409 F.Supp. 1033, 1042 (D.Conn.1976). The second *Eldridge* factor

---

**10.** Defendants' Memorandum in Opposition to Plaintiff's Motion at 6.

recognizes this point and mandates consideration of the value to be gained from additional procedures. The emphasis is on the minimization of erroneous deprivation of interests.

In the present context nothing can be gained from additional procedural safeguards. The greatest justification for an opportunity to be heard *prior* to governmental action is the minimization of erroneous findings of fact. *Mathews v. Eldridge, supra* at 343–45, 96 S.Ct. 893; *Goldberg v. Kelly,* 397 U.S. 254, 268–69, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Here, there are no questions of fact in dispute,[11] and, hence, no prior *evidentiary* hearing is necessary. W. Gellhorn and C. Byse, *Administrative Law* 584 (1974); *Citizens for Allegan County, Inc. v. Federal Power Comm'n,* 134 U.S. App.D.C. 229, 414 F.2d 1125, 1228 (1969). Stolberg's challenge to the application of the dual-job ban is based solely on legal grounds. Prior to applying the dual-job ban, the Attorney General, the state's highest legal officer, rendered a formal legal opinion. While he might have sought arguments from the plaintiff before submitting that opinion, due process does not require him to do so. In any event, plaintiff's legal claims are most appropriately presented to a state judicial forum—the very forum that is now considering them.

Stolberg argues, however, that the hearing being afforded to him by the state court is inadequate. First, he contends that the declaratory judgment he is seeking from the state court will not provide adequate relief. Even if I were to assume that the defendants would continue to apply the dual-job ban to the plaintiff in the face of a declaratory judgment to the contrary (an assumption I cannot make, *cf. Perez v. Ledesma,* 401 U.S. 82, 125, 91 S.Ct. 674, 27 L.Ed.2d 701 (1975) (Brennan, J. concurring in part, dissenting in part)), plaintiff's argument is without merit. State law provides coercive relief in the form of mandamus—a remedy which seems wholly adequate in the present situation. Conn.Gen. Stat. § 52–485 *et seq.;* Conn.Prac.Book § 461 *et seq.*[12] Plaintiff cannot be rewarded for choosing a less effective state remedy.

Stolberg's second argument is that the torpidity of the state proceedings renders them constitutionally inadequate. However, plaintiff has not sought any of the available methods for receiving an expedited hearing in the state courts, *e. g.,* Conn.Prac.Book § 465. Therefore, this claim is also without merit.

In short, I hold that the proceedings now taking place in state court (or the alternative proceedings available under state law) afford plaintiff with the opportunity to be heard on his purely legal claims "at a meaningful time and in a meaningful manner" and hence satisfy due process.

## IV. *Conclusion*

There are no disputes as to the facts relevant to the plaintiff's due process claim.

---

**11.** The only factual premises upon which the defendants have acted is that Stolberg is a member of the SCSC faculty and also a member of the state legislature. Plaintiff has never challenged these factual premises. Furthermore, as a general proposition, application of the dual-job ban will rarely, if ever, involve factual disputes because the only relevant facts are whether an individual is holding two state jobs simultaneously, both matters of public record.

**12.** Of course, mandamus is available only to coerce the performance of ministerial, as opposed to discretionary acts. The parties are in agreement that the payment of salaries by the Comptroller is a routine ministerial duty. Affidavit of Louis Winer, Sept. 2, 1975, ¶ 6. Plain-

tiff's name is being placed on the payroll list and Conn.Gen.Stat. § 3–119 requires the Comptroller to pay the salary of all state employees listed on the payroll within 15 days. In an action for mandamus, the bar of the dual-job ban would arise as a defense.

Plaintiff argues that claims of immunity will bar his recovery of adequate monetary relief. The cases cited by plaintiff do not support this contention and no claim of immunity will bar mandamus relief. In any event, at this stage, plaintiff has not demonstrated that claims of immunity render the hearing in state court inadequate. Furthermore, immunity claims may also be available in this court. *See, e. g., Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

However, plaintiff is not entitled to relief as a matter of law. Therefore, his motion for partial summary judgment is denied. I must also deny plaintiff's motion for a preliminary injunction because he has not demonstrated a likelihood of success on the merits.

SO ORDERED.